**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

LASHAWNDA WALKER, individually and  )
as next friend of her children, D.W., a minor,  )
M.H., a minor, Z.H., a minor and M.W.,  )
a minor; KIMBERLY HUNTER, individually  )
and as next friend of her child, M.C., a minor;  )
AMOS WILLIAMS; ROBIN CLINTON,  )
individually and as next friend of her  )
children, J.S. Jr., a minor, J.C., a minor, and  )
A.S., a minor; MARK STENSON; LATASHA  )
EDWARDS, individually and as next friend  )
of her child, B.H., a minor, and DIONNE  )
HENDERSON, individually and as next  )
friend of her children, C.B., a minor, and  )
A.H., a minor,  )
                                       )

      Plaintiffs,  )
                                       )

      v.  )      No. 2:16 CV 367
                                       )

CITY OF EAST CHICAGO; ANTHONY  )
COPELAND, individually and in his official  )
capacity as Mayor of the City of East Chicago;  )
BP PRODUCTS NORTH AMERICA INC.;  )
E I DU PONT DE NEMOURS and  )
COMPANY; and ATLANTIC RICHFIELD  )
COMPANY,  )
                                       )

      Defendants.  )

## OPINION and ORDER

Plaintiffs, former residents of the West Calumet Public Housing Complex ("the

Complex"), bring these claims under Indiana law and 42 U.S.C. § 1983 stemming from

their exposure to lead and arsenic contamination at the site of the Complex. Defendants,

1

Mayor Anthony Copeland and the City of East Chicago (collectively, "the City Defendants," or "the Mayor" and "the City") have filed a motion to dismiss. (DE # 39.)[1] Defendants Atlantic Richfield Company and BP Products North America Inc. (collectively, "ARCO") have filed a motion to dismiss. (DE # 60.) Defendant E. I. du Pont de Nemours and Company ("DuPont") has filed a motion to dismiss. (DE # 63.) Also pending are motions for judicial notice filed by ARCO (DE # 62) and DuPont (DE # 65) and the City Defendants' Rule 12(f) motion to strike portions of plaintiffs' response to their motion to dismiss (DE # 55).

I.     BACKGROUND

At the time of filing the complaint, the individual plaintiffs had been residents of the Complex for between 3 and 11 years. (*Id.*)  The Complex is located within the USS Lead Superfund Site where the ground is "highly contaminated with lead and arsenic." (DE # 36-1.) The site is currently the subject of a Consent Decree in the cause of *United States v. Atlantic Richfield Company, et al.,* No 2:14-CV-312-PPS-PRC ("the Cleanup Action").

Plaintiffs' amended complaint states that DuPont and ARCO "entered into an

---

[1] The City Defendants have also filed a previous motion to dismiss. (DE # 20.) However, that motion to dismiss was made moot when plaintiffs filed their second amended complaint. (DE # 36.) Therefore, the first motion to dismiss (DE # 20) is **denied as moot**.

agreement with the EPA[2] and IDEM[3] for a $26 million cleanup of lead and arsenic contamination in East Chicago." (DE # 36 at ¶ 25.) Plaintiffs contend that the parties to this agreement "failed to provide notice to the [p]laintiffs or the general public regarding the agreement . . . or the underlying circumstances which detrimentally affected the property, health and lives of the [p]laintiffs."(*Id.*) They allege that the combined actions of the defendants exposed them to "extremely high levels of lead, arsenic and other potentially harmful contaminants." (*Id.* at ¶ 26.)

They further contend that DuPont and ARCO ("the Corporate Defendants") are responsible for depositing the pollutants on the site of the Complex (*Id.* at ¶ 36), and that all of the defendants wrongfully concealed the facts of the contamination from plaintiffs, causing further injury (*Id.* at ¶ 35). Plaintiffs allege that Mayor Copeland's wrongful acts "were a manifestation of the City of East Chicago's own wrongful acts," namely, policies and customs supporting the "deliberate concealment of dangers affecting the [p]laintiffs." (*Id.* ¶¶ 27-28)

As a result of all defendants' actions, plaintiffs allege that they have suffered past, present, and future personal injuries including: "various health problems, weight loss, shortened life expectancy, miscarriage, physical pain and suffering, mental anguish, medical expenses, medical monitoring expenses, wage loss, brain and developmental injuries, cognitive deficits, lost earning capacity, aggravation and

---

[2]United States Environmental Protection Agency

[3]Indiana Department of Environmental Management

exacerbation of pre-existing conditions and contract damages." (*Id.* at ¶ 14.)

On November 16, 2016, plaintiffs filed a second amended complaint, bringing ten counts against defendants. Count I is a claim brought under § 1983 for violation of plaintiffs' substantive due process rights on a theory of state-created danger (*Id.* at ¶¶ 38-53); Count II is a § 1983 claim for violations of the Fourteenth Amendment's Equal Protection Clause and Privileges and Immunities Clause (*Id.* at ¶¶ 54-61); Count III is another substantive due process claim alleging a violation of plaintiffs' right to bodily integrity (*Id.* at ¶¶ 62-74); Count IV is a procedural due process claim for the deprivation of a contractually-created property right (*Id.* at ¶¶ 75-81); Count V is a conspiracy claim (*Id.* at ¶¶ 82-85); Count VI is a personal injury claim against the Corporate Defendants (*Id.* at ¶¶ 86-95); Count VII is a claim for breach of contract and implied warranty against the City Defendants (*Id.* at ¶¶ 96-105); Count VIII is a claim for fraudulent misrepresentation against the City Defendants (*Id.* at ¶¶ 106-114); Count IX is a trespass claim against all defendants (*Id.* at ¶¶ 115-121); Count X is a negligence claim against all defendants (*Id.* at 122–131).

## II.    LEGAL STANDARD

Defendants have moved to dismiss plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. A judge reviewing a complaint under a Rule 12(b)(6) standard must construe it in the light most favorable to the non-moving party, accept well-pleaded facts as true, and draw all inferences in the non-movant's favor. *Erickson v. Pardus* , 551 U.S. 89, 93 (2007); *Reger Dev., LLC v.*

*Nat'l City Bank,* 595 F.3d 759, 763 (7th Cir. 2010). Under the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy Rule 8(a), "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ray v. City of Chicago,* 629 F.3d 660, 662-63 (7th Cir. 2011); *Twombly,* 550 U.S. at 555, 570. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994) among other authorities). As the Seventh Circuit recently explained, a complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010).

However, plaintiffs do not need to plead facts that establish each element of a cause of action and, "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan*, 40 F.3d at 251. Even

5

if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded are taken as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III.   DISCUSSION

### A.      *Plaintiffs' § 1983 Claims*

Counts I-IV of the complaint bring claims under 42 U.S.C. § 1983. Plaintiffs bring these claims against all defendants. The court will first evaluate these claims as to the Corporate Defendants before turning to the City Defendants.

#### i.      *§ 1983 Claims Against the Corporate Defendants*

To state a claim under § 1983, a plaintiff must allege (1) a deprivation of a right secured by the Constitution or laws of the United States (2) by a person acting under color of state law. *Windle v. City of Marion, Ind.,* 321 F.3d 658, 661 (7th Cir. 2003). When bringing a § 1983 claim against a defendant who is not a government official or employee, a plaintiff must raise sufficient allegations that the private entity acted under color of state law. *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 822 (7th Cir. 2009). "At its most basic level, the state action doctrine requires that a court find such a 'close nexus between the State and the challenged action' that the challenged action 'may be fairly treated as that of the State itself.'" *Id.* at 823 (quoting *Jackson v. Metro Edison Co.,* 419 U.S. 345, 351 (1974)).

ARCO and DuPont each contend that plaintiffs' complaint fails to state a § 1983

claim against them because it does not sufficiently allege that they were acting under color of state law. (DE ## 61 at 3-6, 64 at 8-9.) In response, plaintiffs argue that the Corporate Defendants were state actors by virtue of the Consent Decree that settled claims brought against them in the Cleanup Action. (DE ## 70 at 5-6, 71 at 5-6.) In particular, plaintiffs argue that the settlement in the Cleanup Action afforded the Corporate Defendants with a release from liability for certain state and federal claims in exchange for $26 million dollars of funding for the cleanup effort. (*Id.*) Thus, they argue, the Consent Decree provided the Corporate Defendants with protection from liability, and this protection incentivized the Corporate Defendants in remaining silent about the health hazards for residents of the Complex. (*Id.*)

Plaintiffs lean heavily on the Seventh Circuit's formulation of the state actor doctrine from a case that predates the Supreme Court's articulation of the "close nexus" standard in *Jackson v. Metro Edison Co.,* 419 U.S. 345, 351 (1974). Plaintiffs argue that, because of the Consent Decree, the Corporate Defendants received "aid, comfort, or incentive" from the government such that they qualify as state actors under § 1983. (DE ## 70 at 5, 71 at 5 (quoting *Lucas v. Wis. Elec. Power Co.,* 466 F.2d 654-56 (7th Cir. 1972).)

Whether or not the *Lucas* articulation is still good law after *Jackson*, plaintiffs' claims stretch the state actor doctrine beyond its limits. *Lucas* itself stated that a private defendant acts under color of state law only if the government's support is "substantial, measured by either its contribution to the effectiveness of defendant's conduct, or

perhaps by its defiance of conflicting national policy." 466 F.2d at 656. None of the allegations in the amended complaint amount to "substantial support" providing "aid, comfort, or incentive."

To begin with, the alleged contamination of the site happened decades ago, long before the Consent Decree could even be contemplated, let alone counted upon as incentive or support. It is also worth pointing out that the release from liability in the Consent Decree was not a mere gratuity. Rather, the Consent Decree was the culmination of an action brought by the government *against* the Corporate Defendants and obligated the Corporate Defendants to pay at least $26 million towards the cleanup efforts.  (DE # 36 at ¶ 25.) The fact that the settlement of that lawsuit included a release of certain claims does not thereby transform the Corporate Defendants into state actors. If that was the case, nearly any private entity that is prosecuted by the government and then subsequently enters into a settlement would similarly qualify as a state actor. Such an outcome would distort the state actor doctrine beyond recognition and the case law bears this out.

In *Lucas*, the sole case provided in support of plaintiffs' claims, the Seventh Circuit held that a public utility provider was not a state actor even though the government had effectively granted it a monopoly over the provision of electricity. 466 F.2d at 656-58. The court remarked that the support derived therefrom was "at best, insignificant," and thus, the plaintiffs could not proceed on their claims under § 1983. *Id.* at 658. The alleged "aid, support and comfort" in this case – release from liability in

exchange for over $26 million – falls well short of that provided in *Lucas*, and in neither case is there such a "close nexus" that the Corporate Defendants can be considered state actors for purposes of § 1983. *See also Bus. Realty Inv. Co. v. Insituform Techs., Inc.,* 564 F. App'x 954, 956-57 (11th Cir. 2014) (holding that a private contractor hired by County to perform services pursuant to environmental consent decree was not a state actor). ARCO and DuPont's motions to dismiss are granted as to plaintiffs' § 1983 claims.

ii.     *§ 1983 Claims Against the City Defendants*

The City Defendants have also moved to dismiss plaintiffs' claims under § 1983. The City Defendants attack the sufficiency of the allegations and also highlight the Mayor's lack of personal involvement in the alleged violations. (DE # 40 at 5-7.)

Plaintiffs' § 1983 claims against the City are governed by the municipal liability standards set forth in *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658 (1978). Under *Monell,* a local government may not be sued under § 1983 for an injury caused solely by its employees or agents. *Id.* at 694. Rather, "a plaintiff must show the existence of an "official policy" or other governmental custom that not only causes but is the "moving force" behind the deprivation of constitutional rights." *Teesdale v. City of Chicago,* 690 F.3d 829, 834 (7th Cir. 2012) (citing *Estate of Sims v. Cty. of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007)).  Thus, the City can only be held liable where there is "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final

policymaking authority." *Teesdale,* 690 F.3d at 834 (internal quotation marks and citation omitted).

Plaintiffs' *Monell* claims fall under the third variety and they have identified Mayor Copeland as the individual who exercised final policymaking authority on behalf of the City on all matters relating to public housing. (DE # 49 at 5.) Furthermore, all of plaintiffs' claims for municipal liability appear to be premised on the idea that the East Chicago Housing Authority (the "ECHA") is an agency of the City and that the Mayor exercises final policymaking authority over the ECHA. (*See* DE # 36 at ¶ 18 ("ECHA is an arm of the CITY OF EAST CHICAGO and carried out the policies and procedures of the City."); DE # 49 at 2 ("The City for years continued to provide public housing to people including the [p]laintiffs, all the while representing that the City would provide safe housing."); *id.* ("The City and its Mayor failed to maintain the public housing complex in a safe and livable manner and failed to warn its residents of the dangers, which were known.").) The ECHA is not a party to this lawsuit.

Plaintiffs' assumption regarding the ECHA is contrary to Indiana law. Pursuant to Ind. Code. § 36-7-18-14, Indiana Housing Authorities, like the ECHA, are municipal corporations and thus, "as 'municipal corporations,' housing authorities are legal entities separate from the City itself that may sue and be sued in their own name." *Brenston v. Dedelow*, No. 2:03 CV 156, 2005 WL 2204870, at *5 (N.D. Ind. Sept. 7, 2005) (citing Indiana Attorney General Opinion, 1989 Ind. Op. Att'y Gen No.2 (Feb. 10, 1989) (stating that municipal corporations are not departments, boards, commissions or

agencies of the City)). Thus, insofar as plaintiffs' injuries were caused by the policies

and wrongful acts of the ECHA, the City Defendants are not subject to vicarious

liability and cannot be held liable absent allegations of direct involvement. *See Magee v.*

*Hous. Auth. of S. Bend,* No. 3:09 CV 337, 2010 WL 3000660, at *6 (N.D. Ind. July 28, 2010)

(dismissing claims seeking to hold mayor "vicariously liable for wrongful conduct on

the part of the [Housing Authority] because of his appointment and removal

authority"). Thus in evaluating plaintiffs' § 1983 claims, it is necessary to parse out

which allegations can be ascribed to the Mayor acting on behalf of the City and which

allegations apply solely to the ECHA, which is not a party to this lawsuit.

a.      *Substantive Due Process - State-Created Danger*

Plaintiffs' first § 1983 claim is for a violation of the Due Process Clause under the

state-created danger doctrine. *See DeShaney v. Winnebago Cty. Dept. of Soc. Serv.*, 489

U.S. 189 (1989). According to the Seventh Circuit, three principles govern the analysis of

a state-created danger claim: (1) "in order for the Due Process Clause to impose upon a

state the duty to protect its citizens, the state, by its affirmative acts, must create or

increase a danger faced by an individual;" (2) "the failure on the part of the state to

protect an individual from such a danger must be the proximate cause of the injury to

the individual;" and (3) "because the  right to protection against state-created dangers is

derived from the substantive component of the Due Process Clause, the state's failure to

protect the individual must shock the conscience." *King ex rel. King v. East St. Louis Sch.*

*Dist. 189*, 496 F.3d 812 at 817-818 (7th Cir. 2007).

Plaintiffs argue that the "City promised to provide the [p]laintiffs with safe housing . . . [and] continued to rent to the [p]laintiffs over the course of many years, all the while knowing" of the dangers posed by the contamination. (DE # 49 at 4.) However, setting aside any actions of the ECHA, the amended complaint is entirely devoid of any allegations that the Mayor himself undertook any affirmative acts that created the danger and proximately caused plaintiffs' injuries.

Plaintiffs' lease agreements, attached as exhibits to the complaint, are clearly between the individual plaintiffs and the ECHA - not the City and the Mayor. (*See* DE # 36-2.) Thus, any implied promise of safe housing or other aspects of the landlord-tenant relationship cannot be fairly attributed to the Mayor and the City. The only concrete allegation of the Mayor's involvement is based on a letter to residents of the Complex, notifying them of the contamination and advising residents that "it is in your best interest to temporarily relocate your household to safer conditions." (DE # 36-1.) In this letter, the Mayor also indicates that he ordered the City Health Department to offer lead testing to the residents and their families. (*Id.*) Thus, the only allegations pertaining to the Mayor's direct involvement appear to be efforts to mitigate the health risks for residents of the Complex. Plaintiffs have failed make sufficient allegations that the Mayor and the City affirmatively created a danger and failed to protect the plaintiffs in a conscience-shocking manner. The City Defendants' motion to dismiss is granted as to Count I.

b.      *Fourteenth Amendment Equal Protection and Privileges and Immunities*
        *Clauses*

Plaintiffs' second § 1983 claim against the City Defendants alleges violations of

plaintiffs' rights under the Equal Protection and Privileges and Immunities Clauses of

the Fourteenth Amendment. Plaintiffs allege that all of the defendants "acted in concert

and by joint action" to violate plaintiffs' rights. (DE 36 at ¶ 55.) Plaintiffs allege that the

residents of the Complex "predominately consist[ed] of African Americans and other

minorities" and assert that "the City had no compelling interest for discriminating

against and treating the [p]laintiffs differently because of their race." (*Id.* at ¶¶ 57-58.)

To succeed on an equal protection claim, plaintiffs must allege that the City's

policies had a discriminatory effect and that defendants were motivated by a

discriminatory purpose. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017) (citing

*Chavez v. Ill. State Police,* 251 F.3d 612, 635-36 (7th Cir. 2001). "Discriminatory purpose

means more than simple knowledge that a particular outcome is the likely consequence

of an action; rather, discriminatory purpose requires a defendant to have selected 'a

particular course of action at least in part because of its adverse effects on a particular

group.'" *Alston*, 853 f.3d at 907 (quoting *Chavez*, 251 F.3d at 645) (internal quotations

omitted); *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987). Defendants contend that the

amended complaint does not contain any allegations that the City Defendants acted

with discriminatory purpose. (DE # 40 at 13.)

Plaintiffs do not directly respond to the City Defendants' arguments in favor of

dismissal. Nor do they offer any case law in support of their Fourteenth Amendment claims. At most, plaintiffs make an oblique reference to their minority status in a section of their response brief addressing the Mayor's individual liability. There, they assert that "[t]he Mayor ordered that the [p]laintiffs (poor racial minorities) be removed from their homes, without compensation." (DE # 49 at 6.) The court can find no such allegation in the amended complaint, and it is unclear if this statement is offered in support of their Fourteenth Amendment claim. Even so, this argument at best points towards discriminatory effect rather than discriminatory purpose. *Alston*, 853 F.3d at 908 ("True enough, [plaintiff's] statistics show disparate impact: . . . [y]et that does not lead to the inescapable conclusion that the defendants acted with discriminatory intent.") The City Defendants' motion to dismiss is granted as to Count II.

*c.      Substantive Due Process - Bodily Integrity*

The third § 1983 claim is for violations of plaintiffs' substantive due process right to bodily integrity.  The right to "substantive due process is 'very limited,'" *Viehweg v. City of Mount Olive,* 559 F. App'x 550. 552 (7th Cir. 2014) (quoting *Tun v. Whitticker*, 398 F.3d 899, 900 (7th Cir. 2005)) and the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 128 (1992) (internal citations omitted). "Furthermore, to survive a motion to dismiss a claim for deprivation of substantive due process, a plaintiff must allege facts tending to suggest that the government's action was arbitrary." *Naperville Smart Meter Awareness v.*

*City of Naperville,* 69 F. Supp. 3d 830, 839 (N.D. Ill 2014) (citing *Jeffries v. Turkey Run Consol. Sch. Dist.,* 492 F.2d 1, 3-4 (7th Cir. 1974).

Plaintiffs do not allege that the City Defendants directly contaminated their homes. At most, plaintiffs allege that City policy allowed for ECHA to build and operate public housing in an area with contaminated soil, thus increasing their risk of injury. However, such allegations of risk exposure do not state a claim for deprivation of the right to bodily integrity under the Fourteenth Amendment. *See Naperville,* 69 F. Supp. 3d at 939 (collecting cases) (no claim for deprivation of bodily integrity against city that allegedly exposed residents to greater risk of injury from radio waves emitted by "smart" utility meters); *Upsher v. Grosse Pointe Pub. Sch. Sys.,* 285 F.3d 448, 453-54 (6th Cir. 2002) (holding that public school employees lacked Fourteenth Amendment claim after being exposed to asbestos-contaminated materials, because school officials had not "engaged in arbitrary conduct intentionally designed to punish the [employees]"); *Hood v. Suffolk City Sch. Bd.* 469 F. App'x 154, 159 (4th Cir. 2012) (school employee's claims for deprivation of bodily integrity failed despite school board's knowledge of dangerous conditions caused by excessive mold and bacteria growth). Plaintiffs' claims do not amount to an arbitrary deprivation of their right to bodily integrity. The motion to dismiss is granted as to Count III.

> d.      *Procedural Due Process - Deprivation of a Contractually Created Property Right*

Plaintiffs' fourth § 1983 claim asserts violations of their procedural due process

rights stemming from the deprivation of a contractually created property right. The amended complaint alleges that plaintiffs "entered into lease agreements with the [ECHA] which is authorized to carry out rental abilities by the City of East Chicago, as its agent." (DE # 36 at ¶ 76.) The complaint continues that the defendants "deprived [plaintiffs] of their contractually based property right, pursuant to their lease agreements, without proper notice or hearing."(*Id.* at ¶ 78.)

Here again, plaintiffs have conflated the ECHA, an independent municipal corporation, organized under Indiana law, with the City and Mayor of East Chicago. The sole concern of these allegations relates to plaintiffs' rental agreements with the ECHA. None of the allegations detail any personal involvement on the part of the Mayor, implementing policy on behalf of the City. The motion to dismiss is granted as to Count IV.

      B.     *Plaintiffs' State Law Claims*

         i.     *Conspiracy*

Count V of plaintiffs' amended complaint is a claim of conspiracy against all defendants. (DE # 36 at ¶¶ 82-85.) Plaintiffs allege that "the [d]efendants had an agreement together to unlawfully and deliberately deprive [p]laintiffs of their rights, to misrepresent the West Calumet Housing Complex as safe and to expose the [p]laintiffs to lead, arsenic and other potentially harmful chemicals." (*Id.* at ¶ 83.) In their respective motions, defendants argue that this single, conclusory allegation of a conspiracy is insufficient to state a claim for relief.

ARCO argues that, beyond pointing to the Consent Decree itself, plaintiffs have failed "to allege an unlawful agreement between [ARCO] and other defendants, rendering their civil conspiracy claim fatally defective." (DE # 61 at 19-20.) DuPont raises a similar argument in its motion. (DE # 64 at 13-14.) The City Defendants, for their part, offer wide-ranging legal support behind their contention that plaintiffs "have failed to specifically allege an agreement to carry out the alleged events essential for a claim of conspiracy." (DE # 40 at 18-19.)

Plaintiffs' response briefs fail to address defendants' arguments regarding the civil conspiracy claim. As a result, plaintiffs have abandoned this claim. *Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011), *Chappey v. Ineos USA LLC,* No. 2:08-CV-271-RL, 2009 WL 790194, at *2 (N.D. Ind. Mar. 23, 2009), *Campbell v. Supervalu, Inc.,* 565 F.Supp.2d 969, 974 n.6 (N.D. Ind. 2008). Defendants' motions to dismiss are granted as to the conspiracy claim in Count V of the amended complaint.

ii.     *Personal Injury and Negligence Against the Corporate Defendants*

Count VI of the amended complaint raises a personal injury claim against the Corporate Defendants. Plaintiffs allege that the Corporate Defendants "contributed to more than a century of lead and arsenic contamination" at the site of the Complex and contributed to plaintiffs' exposure to those substances. (DE # 36 at ¶¶ 88-89.) Plaintiffs assert that the Corporate Defendants failed to act on their "duty to prevent their operations from contaminating the environment" at the site of the Complex and failed to clean up the contamination and inform plaintiffs of the dangerous environment.

(*Id.* at ¶ 91.)

Count X of the complaint brings a negligence claim against all defendants.[4] Plaintiffs contend that defendants owed a duty to plaintiffs and "breached said duty by failing to maintain [the Complex] in a reasonably safe condition" and failing to warn plaintiffs of the danger. (*Id.* at ¶ 124.)

Under Indiana law, the "essential elements for a negligence action are (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014) (quotation marks omitted). To determine whether a duty exists, the court must balance "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Id.* "[T]he foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 622 N.E.3d 384, 390 (Ind. 2016).

### a.     *Personal Injury and Negligence Claims Against ARCO*

ARCO has moved to dismiss plaintiffs' personal injury and negligence claims on the basis that it owed no duty to plaintiffs. ARCO contends that, under Indiana law, "[a] prior owner-defendant that long ago allegedly contaminated industrial property owes no duty . . . to a plaintiff who now resides on the land." (DE # 61 at 16.) ARCO cites to

---

[4] The court will separately address plaintiffs' negligence claims against the City Defendants alongside plaintiffs' other state law claims against the City Defendants.

an opinion from the Southern District of Indiana in the case of *Wickens v. Shell Oil Co.*, No. 1:05-CV-645, 2006 WL 3254544, at *7 (S.D. Ind. Nov. 9, 2006). In that case, the court explained that imposing a duty in circumstances like the present would be unreasonable in that "future owners may not be known or even contemplated" at the time the contamination occurred and that imposing such a duty "would unreasonably interfere with a landowner's right of ownership." *Id.*, *see also Sanyo N. Am. Corp.*, No. 1:06-CV-405, 2008 WL 2691095, at *5 (S.D. Ind. July 3, 2008) ("[I]t is unreasonable to hold a prior landowner responsible in tort for actions taken approximately forty years before the current owner acquired the land.").

ARCO has also filed a notice of supplemental authority (DE # 80), arising out of a related case that is currently pending in this district, *Rolan, et al. v. Atlantic Richfield Co., et al.*, No 1:16-CV-357-TLS-SLC, 2017 WL 3191791 (N.D. Ind. July 26, 2017). That case, like the present one, involves claims brought by other residents of the Complex against ARCO and DuPont. In addition to federal claims, the plaintiffs also raised state tort claims for negligence and nuisance. The court granted ARCO's motion to dismiss on those claims after determining that ARCO, as a prior owner, owed no duty to the current inhabitants of the land on which the Complex was situated. *Rolan*, 2017 WL 3191791 at *15-17.

In deciding the motion to dismiss, Judge Springmann concluded that "none of the three factors for finding a duty" were present in the plaintiffs' complaint. *Id.* at * 17. First there was no relationship between the plaintiffs and ARCO and thus, "it was not

reasonably foreseeable that the land would be converted into a residential housing complex at the time that [ARCO] was operating its plant there." *Id.* Second, "as it was unclear that tenants would reside there in the future, it was not reasonably foreseeable that [ARCO]'s conduct would cause harm to [tenants] decades later." *Id.* Lastly, the court found that public policy considerations did not "weigh in favor of holding [ARCO] to a duty to future, unknown possessors of its own land. *Id.* (citing *Sanyo N. Am. Corp.*, 2008 WL 2691095, at *5; *Wickens*, 2006 WL 3254544, at *7).

Plaintiffs' response brief does not offer any contrary authority on the issue of whether ARCO owed a duty to residents at the Complex. (*See* DE # 70 at 7.) However, this issue is dispositive and cannot be sidestepped. For the very same reasons highlighted in *Rolan*, the court finds that the amended complaint fails to allege facts that would establish a duty under Indiana law. As such, ARCO's motion to dismiss is granted as to plaintiffs' personal injury and negligence claims.

> b. *Personal Injury and Negligence Claims Against DuPont*

DuPont raises two grounds in its motion to dismiss plaintiffs' personal injury and negligence claims. First, DuPont argues that plaintiffs failed to show that DuPont owed them a duty. (DE # 64 at 10.) Second, DuPont argues that plaintiffs did not adequately plead that DuPont proximately caused the contamination. (*Id.* at 11.) DuPont raised both of these arguments in *Rolan*. However, their motion to dismiss did not enjoy the same success as ARCO's motion. Here again, Judge Springmann's analysis of these issues is instructive.

For purposes of evaluating the existence of a legal duty, there is a crucial distinction to be made between ARCO and DuPont. Whereas ARCO previously owned the parcel upon which the Complex was built, DuPont was the owner of a *neighboring* parcel of land. This difference carries great weight under Indiana law. While a former owner owes no duty to a subsequent resident, a formerly neighboring property owner can be sued for "negligent conduct that may have caused the contamination" on a plaintiff's property even though the plaintiff "did not contract with [the defendant]." *KB Home Indiana, Inc., v. Rockville TBD Corp.,* 928 N.E.2d 297, 307 (Ind. Ct. App. 2010).

In *Rolan,* the court found that DuPont owed a duty to the tenants under Indiana law, noting: "First, the parties stand in a relationship as possessors of interests in neighboring properties. Second it was reasonably foreseeable that [DuPont]'s alleged conduct could harm the neighboring property and any possessor's interest therein. . . . Finally, public policy favors the protection of property rights and prevention of unwanted harm to property." 2017 WL 3191791, at *18.

The court in *Rolan* similarly rebuffed DuPont's argument regarding causation, observing that plaintiffs need not plead that DuPont's contamination was "*the* proximate cause, but only *a* proximate cause" of plaintiffs' injuries in order to succeed on a negligence claim. *Id.* (citing *Carey v. Ind. Physical Therapy, Inc.*, 926 N.E.2d 1126, 1129 (Ind. Ct. App. 2010)). Nothing in the present case warrants a different outcome than *Rolan.* At this stage, the amended complaint sufficiently provides facts to support a finding of duty and adequately alleges proximate causation. DuPont's motion to

dismiss is denied as to plaintiffs' claims for personal injury and negligence.

   *iii.*  *Trespass Claims Against the Corporate Defendants*

  Count IX of plaintiffs' complaint raises a claim of trespass against the Corporate Defendants. Plaintiffs allege that the Corporate Defendants' "negligent, grossly negligent, willful and/or wanton conduct and or failures to act caused contaminants (namely lead and arsenic) to enter upon [the Complex] and subsequently onto [p]laintiffs' person." (DE # 36 at ¶ 116.) Plaintiffs further allege that the Corporate Defendants had exclusive control over the premises of [the Complex] at all relevant times." (*Id.* at ¶ 117.)

  Plaintiffs' claim for trespass fails by its very own terms. To state a claim for civil trespass under Indiana law, plaintiffs must allege two elements: "[f]irst, the plaintiff must show that he possessed the land when the alleged trespass occurred. Second, the plaintiff must demonstrate that the trespassing defendant entered the land without a legal right to do so." *KB Home,* 928 N.E.2d at 308.

  The alleged trespass in this case is the soil contamination at the site of the Complex. By the terms of the complaint, this contamination occurred decades ago, when the Corporate Defendants "had exclusive control over the premises." That is, the alleged trespass happened long before the Complex was built and before the plaintiffs took possession of the land. Moreover, the alleged trespass happened at a time when the Corporate Defendants had control over the premises and thus, naturally had a legal right to conduct business operations thereupon.

Plaintiffs respond that "it is plausible that [] toxins were disturbed and went airborne" during the cleanup effort. (DE # 70 at 9.) However, the amended complaint does not contain any such allegation that the Corporate Defendants, themselves conducted the cleanup effort. More importantly, plaintiffs ignore the fact that the recent cleanup effort was conducted *pursuant to a court order* in the Cleanup Action, and thus, they cannot satisfactorily allege that this trespass occurred in the absence of legal authority.

This outcome follows a line of similar cases that have foreclosed a trespass cause of action under Indiana law. *See KB Home,* 928 N.E.2d at 309 ("Simply put, because KB did not have possession of the land at the time of the alleged trespass, KB did not have a trespass action against Rockville."); *Lily Indus., Inc. v. Health-Chem Corp.,* 974 F. Supp. 702, 709 (S.D. Ind. 1997) ("[T]his court concludes that Indiana would not permit plaintiffs to sue the prior owner of their property for trespass based on actions the prior owner took while in lawful possession of the property that are alleged to have continued to affect that same property after the change of possession."); *Sanyo N. Am. Corp. v. Avco Corp.,* No. 1:06 CV 405, 2008 WL 2691095, at *6 (S.D. Ind. July 3, 2008) ("[A]pplying Indiana law to the facts here, Sanyo's claim must fail because there is no evidence that Avco contaminated the property at a time during which it was not also the owner of the property."). Plaintiffs' claim fares no better. The Corporate Defendants' motions to dismiss are granted as to the trespass claim in count IX.

     iv.     *State Law Claims Against the City Defendants*

Plaintiffs bring state law claims against the City Defendants for breach of contract and implied warranty (Count VII), fraudulent misrepresentation (Count VII), trespass (Count IX), and negligence (Count X). Mayor Copeland and the City of East Chicago move to dismiss these claims on the merits and also raise an affirmative defense under the Indiana Tort Claims Act. (DE # 40 at 6-7, 19 n.2.)

a.      *Trespass and Negligence*

The court now turns to plaintiffs' state law tort claims for trespass and negligence. Under the Indiana Tort Claims Act (the "ITCA") a claim against a political subdivision is barred unless notice is filed with: (1) the governing body of that political subdivision and (2) the Indiana political subdivision risk management commission within one hundred eighty days after the loss occurs. Ind. Code § 34-13-3-8. A person may not initiate a suit against a government entity unless the person's claim has been denied in whole or in part. Ind. Code § 34-13-3-13. "Merely filing a complaint is insufficient notice under the ITCA." *Alexander v. City of S. Bend,* 256 F. Supp 2d 865, 876 (N.D. Ind. 2003) (citing *Kantz v. Elkhart Cty. Highway Dep't,* 701 N.E.2d 608, 616 (Ind. Ct. App. 1998) (holding that the notice of a claim under the ITCA and the complaint in a resultant suit are two separate documents, the latter being filed only after the denial of the claim by a governmental entity)).

In addition to the notice requirement, the ITCA also provides immunity from liability to governmental employees acting within the scope of their employment if a loss results from "[t]he adoption and enforcement of or failure to adopt or enforce a law

24

. . . unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8); *Miller v. City of Anderson*, 777 N.E.2d 1100, 1103 (Ind. Ct. App. 2002).

The City Defendants argue that plaintiffs' allegations against Mayor Copeland pertain to acts undertaken within the scope of his employment and thus, he is entitled to immunity under the ITCA. (DE # 40 at 7.) More fundamentally, the City Defendants assert that plaintiffs have entirely failed to comply with the notice requirement of the Act. (*Id.* at 19 n.2.) They assert that no such notice has been filed and highlight Paragraph 24 of the amended complaint which reads: "[t]he [p]laintiffs *have begun* to file their tort claims with the State of Indiana, the City of East Chicago, and the United States Agencies, as applicable." (DE # 36 at ¶ 24 (emphasis added).)

Plaintiffs' response impliedly concedes that the required notice under the ITCA has not been filed either before or after the commencement of this suit. Rather, plaintiffs argue that the ITCA is "inapplicable" because plaintiff brings constitutional claims under § 1983 and the pendent claims are against the Mayor in his individual capacity, while the ITCA only acts to bar pendent official capacity claims. (DE # 49 at 9.)

Plaintiffs' assertion is simply incorrect. It is true that the ITCA does not bar § 1983 claims and also acts to bar pendent official capacity claims. *See Estate of Conner by Conner v. Ambrose*, 990 F.Supp 606, 617 (N.D. Ind. 1997) ("Accordingly, plaintiffs' § 1983 claims are not precluded by the Indiana Tort Claims Act. However, all of plaintiffs' pendent state law claims as to any defendants in their official capacity are precluded by

the Act."). However, it is also true that the ITCA applies to state law tort claims brought against governmental actors in their individual capacity. "A plaintiff cannot avoid the notice requirements [of the ITCA] simply by suing a governmental employee in his or her individual capacity." *Sowell v. Dominguez*, No. 2:09 CV 47, 2011 WL 294758, at \*12 (N.D. Ind. Jan. 26, 2011) (citing *Schreiber v. Lawrence*, No. 1:02 CV 1319. 2003 WL 1562563, at \*5 (S.D. Ind. Mar 4, 2003). Notice is required "if the act or omission causing the plaintiff's loss is within the scope of the defendant's employment." *VanValkenburg v. Warner*, 602 N.E.2d 1046, 1049 (Ind . Ct. App. 1992).

Plaintiffs' allegations against Mayor Copeland solely concern his functions as the Mayor of the City of East Chicago. Thus, notice was required under the ITCA. By the very terms of the complaint, notice was not served prior to the commencement of this lawsuit, therefore plaintiffs' state law tort claims are barred by the ITCA and dismissal is appropriate. *Alexander*, 256 F. Supp. 2d at 877. The City Defendants' motion to dismiss is granted as to Count VII and Count VIII.

> b. *Breach of Contract and Implied Warranty and Fraudulent Misrepresentation*

The City Defendants move to dismiss plaintiffs' claims for breach of contract on the basis that the amended complaint fails to allege the necessary elements of their claim. (DE # 40 at 20.) To prove a breach of contract, plaintiffs must show the existence of a contract, breach of that contract, and damages. *Norwood Promotional Products, LLC, v. KustomKoozies, LLC*, 835 F. Supp. 2d 685, 697 (S. D. Ind. 2011).

The contracts in question, attached as exhibits to the amended complaint, are the plaintiffs' lease agreements at the Complex. The City Defendants point out that neither Mayor Copeland nor the City of East Chicago were parties to those lease agreements which were contracts between plaintiffs and the ECHA. Again, the ECHA is not a party to this lawsuit.

City Defendants argue that the ECHA, is a distinct entity from the City which exercises its own authority, independently from the Mayor. Plaintiffs' counterargument is that the Mayor appoints the commissioners of the housing authority. (DE # 49 at 8.) Thus, while acknowledging that the "housing authority may make and execute contracts," plaintiffs contend that official ECHA authority cannot be exercised without a majority vote of the commissioners appointed by the mayor. (*Id.* (citing *Bragg v. City of Muncie,* 930 N.E.2d 1144, 1148 (Ind. Ct. App. 2010)). Plaintiffs' theory, offered without legal support, is that the Mayor's appointment authority allows for vicarious liability for any breach of the ECHA lease agreements.

Plaintiffs are again mistaken. As discussed above, under Ind. Code. § 36-7-18-14, the ECHA, is a municipal corporation, "separate from the City itself that may sue and be sued in [its] own name." *Brenston*, 2005 WL 2204870, at *5. Plaintiffs' amended complaint does not allege that Mayor Copeland had any personal involvement with the contracts at issue. Thus, the City Defendants cannot be held liable for any alleged breach of the express or implied terms of the lease agreements. *See Magee v. Hous. Auth. of S. Bend,* No. 3:09 CV 337, 2010 WL 3000660, at *6 (N.D. Ind. July 28, 2010) (dismissing

claims seeking to hold mayor "vicariously liable for wrongful conduct on the part of the [Housing Authority] because of his appointment and removal authority"). The City Defendants' motion to dismiss plaintiffs' breach of contract claim is granted.

Plaintiffs' fraudulent misrepresentation claim is similarly defective. Plaintiffs allege that "[t]hroughout the term of tenancy and at signing of the respective tenant leases, the City of East Chicago and its Mayor fraudulently misrepresented to the [p]laintiffs that [the Complex] was safe and fit for human habitation." (DE # 36 at ¶ 107.)

Under the heightened pleading standards of Rule 9(b), the pleading must state with particularity the circumstances constituting fraud. *Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732, 737 (7th Cir. 2014). While the precise level of particularity depends on the facts of the case, the pleading "ordinarily requires the who, what, when, where and how of the fraud." *Id.* (internal quotations omitted).

Plaintiffs' misrepresentation claim fails to clear the heightened standard under Rule 9(b). The amended complaint lacks any allegations that the Mayor had any direct involvement in the formation of the lease agreements. As with the breach of contract claim, plaintiffs' theory of recovery is premised on the Mayor's vicarious liability for the ECHA's alleged wrongdoing.

Plaintiffs argue in their response that "[t]he City and Mayor directed the City's public housing" and "knew that reporting the [C]omplex as safe to the [p]laintiffs was a lie." (DE # 7-8.) Yet, the amended complaint contains no allegations of Mayor Copeland

ever personally "reporting" anything to the individual plaintiffs. Under Indiana law the ECHA is a legally distinct entity and the City Defendants cannot be held vicariously liable for any alleged fraud perpetrated by the ECHA. The City Defendants' motion to dismiss is granted as to plaintiffs' fraudulent misrepresentation claim.

C.      *Standing*

DuPont has also moved to dismiss the amended complaint for lack of standing. (DE # 64 at 4-6.) To establish Article III standing, plaintiffs must establish (1)"injury in fact," that is either "concrete and particularized" or "actual and imminent" rather than merely conjectural or hypothetical; (2) causal connection such that the injury is "fairly . . . trace[able] to the challenged action of the defendant; and (3) that it is "likely" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

DuPont argues that plaintiffs' amended complaint fails under all three elements. First they argue that the alleged injuries from exposure to lead and arsenic are not concrete and particularized. (DE # 64 at 5.) They also contend that the alleged injury is not fairly traceable to DuPont, arguing that plaintiffs "do not and cannot credibly allege that *all* of the harm they suffered was the result of DuPont's conduct."(*Id.*) Last, they argue that plaintiffs fail to satisfy the redressability prong of Article III standing. (*Id.* at 6.)

DuPont raised identical arguments in *Rolan*, where the court noted that "DuPont's argument conflates the requirements for adequately alleging a claim with the

requirements of standing." 2017 WL 3191791, at *5 (citing *Ariz. State Legislature v. Aris. Indep. Redistricting Comm'n,* 135 S.Ct. 2652, 2663 (2015) ("[O]ne must not confuse weakness on the merits with the absence of Article III standing.")). The court held that "[e]ven if the Plaintiffs' allegations do not survive the Defendants' Rule 12(b)(6) Motion, they satisfy the standing requirements of Article III of the Constitution because they sufficiently plead a 'case or controversy.'" *Id.*

The amended complaint before the court sufficiently meets the requirements of Article III standing. To begin with, the exposure to harmful contaminants and the loss of enjoyment of their property are sufficiently "concrete and particularized" injuries to satisfy the first prong. *See id.,* ("For purposes of standing, 'risk of contamination' is an 'actual and imminent' injury.") (citing *Covington v. Jefferson Cty.,* 358 F.3d 626, 638 (9th Cir. 2004); *Carlough v. Amchem Prods., Inc.,* 834 F. Supp. 1437, 1457 (E.D. Pa. 1993) ("[E]xposure to [hazardous substances] causes immediate bodily injury . . ., even if disease is not manifested until much later.") (internal quotation marks omitted)).

Second, plaintiffs' allegations identify DuPont and ARCO as the source of the contaminants and both parties are named in the suit as joint-tortfeasors. Because DuPont does not point to any other possible source of the contamination that is not before the court, the injuries cited in the complaint are fairly traceable to the defendants. *Sierra Club v. Franklin Cty. Power of Ill., LLC,* 546 F.3d 918 at 926-27 ("[w]here a plaintiff has pointed to a polluting source as the seed of his injury, and the owner of the polluting source has supplied no alternative culprit, the 'fairly traceable' requirement

can be said to be fairly met.") (citing *Friends of the Earth v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 162 (4th Cir. 2000) (internal quotation marks omitted). Lastly, DuPont's argument regarding redressability is entirely without merit. Plaintiffs' request for compensatory damages satisfies the Article III requirement. *Rolan,* 2017 WL 3191791, at *5 (citing *King v. Ind. Supreme Ct.,* No. 14-CV-1092, 2014 WL 5798583, at *4 (S.D. Ind. Nov. 7, 2014). DuPont's motion to dismiss for lack of Article III standing is denied.

D.    *Statute of Limitations*

The Corporate Defendants have also moved to dismiss the amended complaint on the basis that plaintiffs' personal injury and § 1983 claims are barred by the statute of limitations. (DE ## 61 at 22; 64 at 20.) Under Indiana law, plaintiffs must bring personal injury claims within two years of the time that the cause of action accrues. Ind. Code. § 34-11-2-4. This limitation period also applies to claims brought under § 1983. *Caldwell v. Marshall,* No. 2:16 CV 210, 2016 WL 6835289, at *1 (N.D. Ind. Nov. 21, 2016). Once "a claimant knows, or in the exercise of ordinary diligence, should have known of the injury," the limitations period begins to run. *Cooper Indus., LLC v. City of S. Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009).

 "[A] motion to dismiss based on [the] failure to comply with the statute of limitations should only be granted where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense. . . . In other words, the plaintiff must affirmatively plead himself out of court; the complaint must plainly reveal that the action is untimely under the governing statute of limitations." *Chicago Bldg. Design P.C.*

*v. Mongolian House, Inc.,* 770 F.3d 610, 613-14 (7th Cir. 2014) (citing *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir. 2005) (internal quotations omitted).

The Corporate Defendants cite to facts from the public record indicating that the EPA initiated its remediation efforts at the USS Lead Superfund Site as far back as 2006, and over the course of the next ten years, published various press releases and advertisements, and hosted public forums relating to the efforts. (DE ## 61 at 23; 64 at 21.) From these facts, defendants argue that it is indisputable that residents of the Complex would have known or should have known about the facts underlying their claims.

Defendants each cite a similar string of cases in support of their motions, all of which are distinguishable from the present case in that they were decided at the summary judgment stage. *See Cooper Indus. LLC, v. City of S. Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009) (granting summary judgment where the City solicited and acquired numerous environmental reports for well over ten years before commencing suit); *McFarland Foods Corp. v. Chevron Corp.,* No. IP99-1489-C-H/G, 2001 WL 238084, at *1 (S.D. Ind. Jan. 5, 2001) (granting summary judgment based on undisputed facts showing knowledge of claims outside of limitations period); *Bernstein v. Bankert,* 1:08-CV0427-RLY-DML, 2010 WL 3893121, at *9 (N.D. Ind. Sept. 29, 2010) (same); *Schuchman/Samberg Investment, Inc. v. Hoosier Penn Oil. Co. Inc.,* 58 N.E.3d 241, 244 (Ind. Ct. App. 2016) (appeal of summary judgment based on statute of limitations)*; Martin Oil Mktg. Ltd. v. Katzioris*, 908 N.E.2d 1183, 1185 (Ind. Ct. App. 2009) (same).

Plaintiffs in this case have not "plead themselves out of court" with respect to the statute of limitations. The Corporate Defendants ask the court to hold that plaintiffs were on inquiry notice based upon a series of sporadic publications from the EPA dating back to 2006. Yet, based on the amended complaint, some of the plaintiffs had not even lived in the Complex for longer than three years prior to 2016, well after the publication of a number of the communications that are alleged to have put plaintiffs on notice. Still others may not have even been born at the time of publication.[5] At this stage, based on the amended complaint, the court cannot conclude that plaintiffs knew or should have known of their injuries outside of the limitations period. *See Rolan,* 2017 WL 3191791, at * 12 ("For the Court to make such a determination at this stage would require a factually intensive endeavor [that would be] inappropriate for a motion to dismiss."); (citing *766347 Ontario Ltd. v. Zurich Capital Mkts., Inc.,* 249 F. Supp. 2d 974, 988 (N.D. Ill. 2003) (denying motion to dismiss for federal securities claim because "inquiry notice is often a question of fact")). The Corporate Defendants' motion to dismiss is denied as to the statute of limitations.

E.     *Failure to Join Required Parties*

DuPont has moved under Rule 12(b)(7) to dismiss the amended complaint for

_____

[5]ARCO correctly recognizes that, under Indiana law, the statute of limitations is tolled for minor children until they reach the age of majority (*see* Ind. Code §§ 1-1-4-5(a)(24), 34-11-6-1), and therefore limits their argument to claims brought by the adult plaintiffs. (DE # 61 at 22 n.9.)

failure to join required parties as defined by Rule 19(b).[6] (DE # 64 at 17.) The determination of whether a party is indispensible under Rule 19(b) involves a three-step inquiry: (1) whether the party is "required" for the resolution of the plaintiff's claims; (2) whether joinder of the party is "feasible"; and (3) if the party is required but joinder is not feasible, whether the party is "indispensible" under Rule 19(b) such that the case must be dismissed in the party's absence. *Wilbur v. Locke*, 423 F.3d 1101, 1111-12 (9th Cir. 2005). "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience," to allow the action to "proceed among the existing parties or . . . be dismissed." Fed. R. Civ. P. 19(b). The rules list four factors that a court should consider in determining whether and how to proceed. The factors include, (1) prejudice to the remaining parties, (2) options for the court to mitigate such prejudice, (3) whether a judgment would be adequate absent the required party, and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. *Id.* at 19(b)(1)-(4). "The Rule 19(b) inquiry is a context sensitive one which may vary from case to case." *Two Shields v. Wilkinson*, 790 F.3d 791, 798 (8th Cir. 2015) (citing *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 118-19 (1968)).

DuPont argues that, based on plaintiffs' allegations, the EPA, IDEM and ECHA

---

[6]The City Defendants also raised the issue of failure to join required parties. (DE # 40 at 7.) However, as discussed above, their motion to dismiss has been granted pursuant to Rule 12(b)(6) and the court need not consider their motion under Rule 12(b)(7).

are all indispensable parties. (DE # 64 at 17.) DuPont highlights the fact that plaintiffs' § 1983 claims "are based, in part, on allegations that the policies and procedures of the EPA, IDEM and ECHA contributed to the wrongdoing by government officials. (*Id.* (citing DE # 36 at ¶ 41).) Likewise, they point out that "plaintiffs' fraud and misrepresentation claims directly implicate EPA and IDEM by alleging 'concealment by the Corporate Defendants, EPA or IDEM of information material to the rights of the Plaintiffs and the general public'" (*Id.* at 18 (quoting DE # 36 at ¶ 32).)

However, plaintiffs' § 1983 claims and claims for fraud and misrepresentation have been dismissed pursuant to Rule 12(b)(6). The only remaining claims against DuPont are plaintiffs' state law claims for personal injury and negligence. DuPont does not raise a compelling argument that the EPA, or IDEM are necessary to the resolution of plaintiffs' state law claims. Meanwhile, to the extent that ECHA is a necessary party for plaintiffs' state law claims, ECHA is not entitled to sovereign immunity and thus, joinder would not be infeasible under the second element of the Rule 19 indispensable party analysis.[7] Because DuPont cannot demonstrate that the EPA, IDEM and ECHA are indispensable parties, the motion to dismiss pursuant to Rule 12(b)(7) is denied.

F.      *Injunctive Relief and Punitive Damages*

DuPont also moves to dismiss plaintiffs' claims for injunctive relief and punitive

_____

[7]DuPont effectively concedes this point in its memorandum in support of its motion to dismiss. (DE # 64 at 19 n.15) DuPont's arguments in its reply memorandum focus solely on the indispensability of the EPA and IDEM without making reference to the ECHA. (*See* DE # 73 at 12-13.)

damages. DuPont argues that plaintiffs' request for injunctive relief is legally deficient because plaintiffs do not allege any specific unlawful practices on the part of DuPont that "will persist in the future." (DE # 64 at 22 (citing *Offor v. Ill. Dept. Of Human Servs.* No. 11 C 7296, 2013 WL 170000, at * 3 (N.D. Ill. Jan 16, 2013) (holding plaintiff failed to state a claim for injunctive relief because he alleged no continuing wrongful conduct)).) DuPont also contends that any injunctive relief in this case would be preempted by the Consent Decree in the Cleanup Action. (*Id.*)

As to punitive damages, DuPont argues that plaintiffs have failed to show that DuPont "acted with fraud, malice, gross negligence or oppression" or that "the public interest would be served by the deterrent effect of punitive damages." (*Id.* (citing *Stuhlmacher v. Home Depot U.S.A. Inc.,* No. 2:10 CV 467, 2011 WL 1792853, at *6 (N.D. Ind. May 11, 2011). )

Plaintiffs do not respond to either argument in their response to DuPont's motion to dismiss. Therefore, plaintiffs have abandoned their claims for injunctive relief and punitive damages against DuPont. *Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011), *Chappey v. Ineos USA LLC,* No. 2:08-CV-271-RL, 2009 WL 790194, at *2 (N.D. Ind. Mar. 23, 2009), *Campbell v. Supervalu, Inc.,* 565 F.Supp.2d 969, 974 n.6 (N.D. Ind. 2008).

G.      *City Defendants' Motion to Strike*

The City Defendants have also moved to strike potions of plaintiffs' response to their motion to dismiss. (DE # 56.) Specifically, defendants object to eight exhibits that

were attached to plaintiffs' response to the motion to dismiss. Defendants argue that the new exhibits were not attached to the amended complaint and thus, fall outside the pleadings and may not properly be considered when ruling on a motion to dismiss under Rule 12(b)(6). (DE # 56 at 2.) However, the eight exhibits in question did not factor into the court's analysis of the pending motions to dismiss. Therefore, the motion to strike is denied as moot.

## IV.     CONCLUSION

For the foregoing reasons, the court

(1) **GRANTS** the City Defendants' motion to dismiss (DE # 39) as to all claims against the City of East Chicago and Mayor Anthony Copeland in his individual and official capacities.

(2) **DENIES AS MOOT** that the City Defendants' prior motion to dismiss (DE # 20).

(3) **DENIES AS MOOT** the City Defendants' Rule 12(f) motion to strike. (DE # 55.)

(4) **GRANTS** ARCO's motion to dismiss (DE # 60) as to all claims against Atlantic Richfield Company and BP Products North America Inc.

(5) **ORDERS** that ARCO's request for judicial notice (DE # 62) is **DENIED.**

(6) **GRANTS**, **in part,** DuPont's motion to dismiss (DE # 63) as to plaintiffs' claims under § 1983 (Counts I-IV), conspiracy (Count V), trespass (Count IX), as well as claims for injunctive relief and punitive damages.

(7) **DENIES, in part**, DuPont's motion to dismiss (DE # 63) as to plaintiffs' claims for personal injury (Count VI) and negligence (Count X).

(8) **ORDERS** that DuPont's request for judicial notice is **DENIED.**

**SO ORDERED**.

Date: September 29, 2017

s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT