UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LASHAWNDA WALKER, individually and as next friend of her children, D.W., a minor, M.H., a minor, Z.H., a minor and M.W., a minor; KIMBERLY HUNTER, individually and as next friend of her child, M.C., a minor; AMOS WILLIAMS; ROBIN CLINTON, individually and as next friend of her children, J.S. Jr., a minor, J.C., a minor, and A.S., a minor; MARK STENSON; LATASHA EDWARDS, individually and as next friend of her child, B.H., a minor, and DIONNE HENDERSON, individually and as next friend of her children, C.B., a minor, and A.H., a minor, <br><br> Plaintiffs, <br><br> v. <br><br> BP PRODUCTS NORTH AMERICA INC.; E I DU PONT DE NEMOURS and COMPANY; and ATLANTIC RICHFIELD COMPANY, <br><br> Defendants. | No. 2:16 CV 367 |

## OPINION and ORDER

This matter is before the court on plaintiffs' motion for leave to file a third amended complaint. (DE # 88.) For the reasons identified below, plaintiffs' motion is granted in part and denied in part.

1

## I. BACKGROUND

Plaintiffs' second amended complaint alleged ten counts against various defendants, including BP Products North America, Inc. ("BP"), E I DuPont De Nemours and Company ("DuPont"), and Atlantic Richfield Company ("ARCO") (collectively "defendants") relating to plaintiffs' exposure to toxins at the West Calumet Public Housing Complex. (DE # 36.) This court granted ARCO's motion to dismiss in its entirety and granted portions of DuPont's motion to dismiss. (DE # 83.) Specifically, this court dismissed plaintiffs' 42 U.S.C. § 1983 claims against ARCO and DuPont on the basis that these defendants did not act under color of state law. (*Id.* at 9.)

Plaintiffs now seek leave to file a third amended complaint, in which they reintroduce their Section 1983 claims against ARCO and DuPont and add additional parties. (DE # 88.) Plaintiffs believe that this court erroneously dismissed their Section 1983 claims against ARCO and DuPont based on the court's misunderstanding of their claims against these defendants, and they seek to address these errors by amending their complaint.[1] (*Id.* at 1-2.)

ARCO and DuPont oppose the motion and argue that plaintiffs' proposed amended complaint does not add any additional facts that would permit the court to find that defendants acted under color of law. Rather, plaintiffs continue to allege that

---

[1] The court notes that a motion for leave to file an amended complaint is not the proper procedural mechanism to correct factual errors a party believes to exist in a court's dismissal order. Nevertheless, the court will address the merits of plaintiffs' argument as it is easily dispelled.

defendants were state actors because they entered into a consent decree with two governmental agencies. Defendants argue that plaintiffs' motion should be denied because the court dismissed these claims with prejudice and amendment would be futile.

## II. LEGAL STANDARD

Plaintiffs' motion to file a third amended complaint is governed by Federal Rule of Civil Procedure 15(a)(2). This rule states, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002). "'Although the rule reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile.'" *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (internal citation omitted). "There is no abuse of discretion where the district court denies a motion for leave to amend when the proposed amendment would not cure the deficiencies identified in the earlier complaint." *Bell v. City of Chicago*, 694 F. App'x 408, 412 (7th Cir. 2017), *reh'g and suggestion for reh'g en banc denied* (Aug. 17, 2017). *See also Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015).

## III. ANALYSIS

### A. *Plaintiffs' Claims were Dismissed with Prejudice*

DuPont and ARCO both oppose plaintiffs' motion to amend on the basis that plaintiffs are attempting to revive claims that were dismissed with prejudice. (DE # 92 at 2-3; DE # 94 at 4.) Defendants maintain that because this court did not provide plaintiffs with an opportunity to replead their dismissed claims, the dismissal constituted a dismissal with prejudice. Plaintiffs do not offer any substantive response to this argument.

Rule 41(b) states, "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule–except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19–operates as an adjudication on the merits." Fed. R. Civ. P. 41. "When a case of which the court has jurisdiction is dismissed because it fails to state a claim . . . the dismissal is a merits determination and is therefore with prejudice." *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 751 (7th Cir. 2013). *See also St. John v. Cach, LLC*, 822 F.3d 388, 392 (7th Cir. 2016) (dismissal of a case pursuant to Rule 12(b)(6) or 12(c) is a dismissal with prejudice); *Georgakis v. Illinois State Univ.*, 722 F.3d 1075, 1077 (7th Cir. 2013) (dismissal of a case on the merits is a dismissal with prejudice unless the court grants the plaintiff leave to replead).

4

This court's dismissal of plaintiffs' Section 1983 claims was made on the merits of those claims. The court did not provide plaintiffs an opportunity to replead. Thus, the dismissal of those claims was with prejudice.

B.  *The Court's Dismissal Order was not Predicated on Factual Error*

Plaintiffs argue that this court misunderstood the allegations set forth in their Second Amended Complaint, and that this misunderstanding led the court to erroneously dismiss their Section 1983 claims against ARCO and DuPont. (DE # 88.) Plaintiffs argue:

> Factual errors caused a dismissal because the Plaintiffs complained of [ARCO and DuPont] being negligent by prior ownership, that was not the facts presented. Instead the facts before the court were that ARCO and DuPont engaged in a cleanup and that ARCO and DuPont entered into a clean up agreement. ARCO kept silent of the dangers known to exist. ARCO and DuPont were motivated to keep silent because they would not have to reimburse the medical costs of these African American tenants.

(*Id.* at 2.) This court did not misunderstand plaintiffs' claims. In the dismissal order, this court considered and rejected this basis for conferring Section 1983 liability upon ARCO and DuPont, stating:

> [P]laintiffs argue that the Corporate Defendants were state actors by virtue of the Consent Decree that settled the claims brought against them in the Cleanup Action. In particular, plaintiffs argue that the settlement in the Cleanup Action afforded the Corporate Defendants with a release from liability for certain state and federal claims in exchange for $26 million dollars of funding for the cleanup effort. Thus, they argue, the Consent Decree provided the Corporate Defendants with protection from liability and this protection incentivized the Corporate Defendants in remaining silent about the health hazards for residents of the Complex.

(DE # 83 at 7 (internal citations omitted).)

In the dismissal order, this court found that plaintiffs failed to sufficiently plead the existence of a close nexus between defendants and the Environmental Protection Agency ("EPA") and the Indiana Department of Environmental Management ("IDEM") – the other signatories of the Consent Decree – for two reasons. (*Id.* at 8-9.) First, defendants' conduct, the alleged contamination of the Site, occurred decades before the parties entered into the Consent Decree. Second, the Consent Decree was a settlement of an action brought by the government against the defendants regarding the contamination of the Site. Thus, this court determined that the Consent Decree does not reflect a joint effort between ARCO, DuPont, and the government to deprive the plaintiffs of any of their constitutional rights. (*Id.*)

    C.    *Amendment is Futile*

Plaintiffs' proposed third amended complaint does not offer any new allegation that would change this court's original analysis, and therefore the proposed amendment would be futile. Plaintiffs' proposed amended complaint still has not alleged facts from which the court could plausibly infer that defendants acted under color of state law.

"For a private actor to act under color of state law he must have 'had a 'meeting of the minds' and thus reached an understanding' with a state actor to deny plaintiffs a constitutional right." *Wilson v. Warren Cty., Illinois*, 830 F.3d 464, 468 (7th Cir. 2016) (internal citation omitted). "[T]he state actor must share the private actor's unconstitutional goal in order for a state actor to be acting under color of state law. In

6

other words, '[a] private actor . . . cannot unilaterally convert a state actor's legitimate activity into an illegal act, conferring both constitutional accountability on itself and liability on the state." *Id.* (internal citation omitted).

While there is no definitive test to determine whether a defendant was a state actor, the Seventh Circuit has identified numerous situations in which private conduct may be said to have been conducted under color of state law. *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). For example, private action can become state action when: (i) "private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights;" (ii) "where the state compels the discriminatory action;" (iii) "when the state controls a nominally private entity;" (iv) "when it is entwined with its management or control;" (v) "when the state delegates a public function to a private entity;" or (vi) "when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself." *Id.*

As in their second amended complaint, plaintiffs' proposed third amended complaint is premised on their belief that ARCO and DuPont are state actors by virtue of the Consent Decree. (DE # 88-1 at 10.) While plaintiffs added two new allegations regarding defendants' motive for entering into the Consent Decree, these allegations are

7

inherently contradictory and do nothing to address the deficiencies identified in this court's dismissal order.[2]

First, plaintiffs still have not set forth any factual allegations that would plausibly suggest that DuPont, ARCO, the EPA, and the IDEM entered into the Consent Decree for the purpose depriving plaintiffs of privately-funded medical care. The Consent Decree was a settlement of a government action against defendants for environmental contamination. Plaintiffs' conclusion that the parties' true intent in entering the agreement was not to remedy the pollution, but to release defendants from liability to plaintiffs is not plausible based on the facts in the proposed amended complaint. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Moreover, the Seventh Circuit has found that a private entity is not deemed to be a state actor merely because it entered into an agreement with the government that limited a plaintiff's right of recovery. In *Tom Beu Xiong v. Fischer*, 787 F.3d 389 (7th Cir.

---

[2] Plaintiffs added the following allegations in their proposed third amended complaint:

64. The Settlement Amount was intended only for cleaning the ground.

65. The Deal was wholly unrelated to the object of cleaning up of the ground; instead the government and the corporate defendants arbitrarily negotiated away the right of these African American plaintiffs to seek medical care through the federal agency and have that care paid for by ARCO and DuPont.

(*Id.* at 9.) These allegations are insufficient to establish that defendants acted under color of state law by virtue of the Consent Decree.

8

2015), a former county employee sued his union pursuant to Section 1983. *Id.* at 392. He argued that the county and the union conspired to minimize costs by limiting the right of county employees to challenge adverse employment decisions through arbitration, and that this conspiracy violated his right to due process. *Id.* at 398. The Seventh Circuit found that the plaintiff's Section 1983 claim against the union "must fail" for two reasons. First, "[i]t is well established that 'a bare allegation of a conspiracy between private and state entities is insufficient to bring the private entity within the scope of § 1983.'" *Id.* (internal citation omitted). Second, although the collective bargaining agreement "creates a grievance mechanism in which the County and the Union agree to participate, this jointly negotiated procedure is not sufficient on its own to show a close nexus between the Union and the state." *Id.* The Court found that the plaintiff failed to identify any facts demonstrating that the union acted under color of state law and thus he could not proceed with his claim against the union. *See also Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811 (7th Cir. 2009); *Cunningham v. Southlake Ctr. For Mental Health, Inc.*, 924 F.2d 106 (7th Cir. 1991).

Here, as in *Tom Beu Xiong*, plaintiffs cannot transform defendants into state actors by way of a government agreement alone. The existence of the Consent Decree, without more, is insufficient to establish a close nexus between defendants and the EPA and IDEM. Plaintiffs have not set forth factual allegations that plausibly claim that defendants and the government entered into the Consent Decree for the purpose of

9

violating plaintiffs' rights. Thus, plaintiffs are denied leave to reintroduce their Section 1983 claims against defendants because amendment would be futile.

D.  Other Amendments

With the exception of the claims identified above, plaintiffs shall be permitted to file their proposed third amended complaint. The proposed third amended complaint provides additional factual allegations, names a new plaintiff and a new defendant, and reinstates claims for punitive damages and injunctive relief.

DuPont opposes the reintroduction of plaintiffs' claims for punitive damages and injunctive relief. DuPont argues that this court's earlier dismissal of these claims for relief was a dismissal with prejudice. However, a prayer for relief is not a "claim" subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the rule under which DuPont moved. *Cf. Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) ("Although Rule 8(a)(3) of the civil rules requires that a complaint contain 'a demand for judgment for the relief the pleader seeks,' the demand is not itself a part of the plaintiff's claim . . ."). Moreover, the court notes that under the federal rules, the court is permitted to award any warranted relief regardless of what a plaintiff seeks in his complaint. *See* Fed. R. Civ. P. 54(c) ("Every other final judgment [other than a default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."). Thus, plaintiffs will be permitted to include a request for punitive damages and injunctive relief in their prayer for relief in their third amended complaint.

## IV. CONCLUSION

For these reasons, the court **GRANTS IN PART** plaintiffs' motion to file a third amended complaint (DE # 88), in a manner consistent with this order, within 14 days of the entry of this order.

**SO ORDERED**.

Date: May 8, 2018

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT